Lilly *et al. v.* Dunn, Administrator, *et al.*

Filed June 17, 1884.

No. 10,882.

## LILLY ET AL. *v.* DUNN, ADMINISTRATOR, ET AL.

MORTGAGE.—*Action to Redeem.*—*Parties.*—*Joinder of Plaintiffs.*—The administrator, widow and heirs at law of a deceased mortgagee may join as plaintiffs in a suit to redeem a senior mortgage.

SAME.—*Foreclosure.*—*Statute of Limitations.*—A suit to foreclose a mortgage, not containing a covenant to pay, is barred when the debt secured by it is barred, and, when so barred, a suit by the mortgagee or his representatives to redeem a senior mortgage is also barred.

SAME.—*Indemnifying Mortgage.*—A suit to foreclose a mortgage given to indemnify the mortgagee on account of liability as surety for the mortgagor, but containing no covenant to pay, is barred by the statute, R. S. 1881, section 292, in six years from the time a cause of action accrues thereon.

SUBROGATION.—*Pleading.*—A complaint to enforce a right acquired by subrogation should state the facts which give rise to the right claimed.

PRACTICE.—*Failure to Plead.*—*Judgment.*—*Default.*—A failure to plead or make up issues as required justifies a judgment as upon default. R. S. 1881, section 401.

From the Superior Court of Marion County.

Lilly *et al. v.* Dunn, Administrator, *et al.*

*F. Rand* and *J. M. Winters,* for appellants.

*G. W. Galvin,* for appellees.

NIBLACK, J.—Complaint by William Max Dunn, administrator of the estate of John P. Dunn, deceased, Margaret E. Dunn, the widow, and William M. Dunn, William Dunn, Isaac Dunn, Margaret Dunn and Priscilla B. Dunlevy, the children of the decedent, against John O. D. Lilly, Mary E. Lilly, Charles T. Wesley, Henry J. Swift and George W. Atkins, charging that in the lifetime of the said John P. Dunn, that is to say, on the 25th day of January, 1855, one Allen May, who was then the owner of the real estate hereafter described, and his wife Sinah May, executed and delivered to the said John P. Dunn, together with James P. Drake and Michael G. Bright, a mortgage on block number eight (8) in Drake's addition to the city of Indianapolis in this State, with other real property, to indemnify and secure him, the said John P. Dunn, and his co-mortgagees, for large sums of money advanced to him, the said Allen May, to wit, the sum of $10,000, and to protect them, the said Dunn, Drake and Bright, and each of them severally, from further loss and damage as the sureties of the said Allen May, which mortgage was duly recorded; that at divers times, subsequent to the execution of said mortgage, the said John P. Dunn was compelled to pay and did pay large sums of money as the surety of the said Allen May, amounting in the aggregate to the sum of $20,000; that to pay said last named sums of money the real estate of the said John P. Dunn was levied upon and sold for one-fifth of its actual value, whereby he suffered loss and sustained damage in the sum of $100,000; that no part of the said several sums of money so paid by the said John P. Dunn were ever repaid to him; that the said Allen May, about the time the real estate of the said John P. Dunn was being levied upon and sold as herein above stated, departed this life utterly insolvent; that in the year 1861, one Griffin Kelley caused a certain mortgage held by

him, which was older, and prior to the mortgage above de-
scribed, to be foreclosed in the Marion Circuit Court upon
said block number eight (8) in Drake's addition to the city
of Indianapolis and other property, making parties defend-
ants to his suit of foreclosure all parties having an interest
therein except the said John P. Dunn ; that under the decree
of foreclosure Lewis Jordan and Isaac C. Johnson became
the purchasers of said block number eight (8) for the sum of
$1,100, receiving a deed therefor on the 4th day of January,
1862 ; that the defendants in this action hold said block num-
ber 8 through and by virtue of titles derived from said sale
to Jordan and Johnson ; that the said John P. Dunn died on
the 31st day of December, 1868, and letters of administra-
tion upon his estate, unadministered, were, on the 29th day
of April, 1877, issued to the plaintiff William Max Dunn.
Wherefore the plaintiffs demanded that they be allowed to re-
deem said block number eight (8) from the sale under Kel-
ley's decree of foreclosure ; that a commissioner be appointed
to ascertain and report the amount the defendants are entitled
to receive as redemption money in the premises, tendering
and offering to pay the amount necessary to redeem said real
estate, and demanding all other proper relief.

. The condition of the mortgage upon which the plaintiffs
based their right of action was as follows : " Provided, how-
ever, and these presents are on this condition, that if the said
Allen May shall well and truly pay all * * * sums of money
for which said Dunn, Drake and Bright, or either of them,
are or shall become liable as drawers, endorsers or acceptors,
or sureties in any way for said May, as the same falls due, and
shall fully indemnify and save them harmless from all. loss
or damages and costs by reason of their liabilities in any way
for the accommodation of said May, then this indenture to
be void. Otherwise to remain in full force and virtue in law.
And it is hereby acknowledged that said Drake, Dunn and
Bright, jointly or individually, are liable at this time as ac-

commodation drawers and endorsers for said May for forty thousand dollars, or thereabouts."

The defendants at special term answered in seven paragraphs. The first was in general denial and the rest set up special matters in defence.

Issues were formed upon the second, third and seventh paragraphs, and the plaintiffs replied, first, special matter, and, secondly, in denial to the fourth and fifth paragraphs. The defendants demurred to the first paragraph of that reply, but the cause was finally disposed of at special term without any decision upon the demurrer to that paragraph.

The sixth paragraph of the answer pleaded the six years' statute of limitations in bar of the action, and, on the 23d day of January, 1882, a demurrer was overruled to that paragraph, and the plaintiffs were then ruled to reply.

On the 23d day of March, 1882, the plaintiffs having failed to reply to said sixth paragraph of answer, final judgment was rendered against them on account of their failure to reply to that paragraph.

The plaintiffs appealed to the general term, where the judgment rendered against them as above was reversed for errors imputed to the special term : *First.* In overruling the demurrer to the sixth paragraph of the answer ; *Secondly.* In rendering final judgment against the plaintiffs, as upon default, while issues of fact as well as of law remained undisposed of, and this appeal is by the defendants from the judgment at general term.

The first point made by the defendants is that the administrator of John P. Dunn was the only proper party plaintiff in the proceedings below, and that the complaint was bad in not showing a right of action in all the plaintiffs ; that, as the complaint was bad, the appellees were not, in any event, injured by the overruling of the demurrer to the sixth paragraph of the answer.

An administrator is a trustee of the personal estate, and it is the duty of the trustee to protect and defend the title to the trust estate. As the legal title is in him, he alone can sue and

be sued in a court of law concerning the estate in his hands as trustee.    Hill Trustees, 545 ; Perry Trusts, sections 328, 520.

In equity, however, a different rule prevails.   Trustees and *cestuis que trust* are the owners of the whole interest in the trust estate, and, therefore, in suits in equity in relation to the estate by or against strangers, both the trustees and *cestuis que trust,* must, or, at least, generally ought to be parties representing that interest.   Hill, *supra;* Perry Trusts, sections 873, 874, 881.

The code of 1852, in force when this suit was commenced, provided, nevertheless, that "An executor, administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the person for whose benefit the action is prosecuted."    2 R. S. 1876, p. 34, section 4; R. S. 1881, section 252.

Under this section of the statute, the widow and children of John P. Dunn were unnecessarily joined as co-plaintiffs in this action, but as the proceeding was strictly an appeal to the equity jurisdiction of the court below, it can not be held that they had no interest in the subject-matter of the action. As we construe the provision of the code set out as above, it did not absolutely prohibit beneficiaries from being joined as co-plaintiffs in cases in which they might have been theretofore properly joined, or required to be joined, but only dispensed with the necessity of joining beneficiaries in such cases.   *Rinker* v. *Bissell,* 90 Ind. 375.

We can not, therefore, sustain the objection made to the sufficiency of the complaint.   The general rule may be said to be that the lien created by a mortgage may be enforced, although the debt which the mortgage was given to secure has been barred by the statute of limitations.   This rule is recognized in many, if not most, of the States, upon the theory that statutes of limitations are applicable only to proceedings in the courts of law, and hence not to suits in chancery.   The general rule may be further stated to be, that a court of equity is not precluded in a suit for the foreclosure of a mortgage given to secure a debt, from rendering a decree against

the mortgagor for any remainder of the debt not satisfied by the sale of the mortgaged property, notwithstanding the debt is barred. This is upon the ground that such a decree is only an incident to the decree of foreclosure, and that when a court of equity once takes jurisdiction of a cause, it will retain its jurisdiction until complete relief is afforded.

In some of the States, however, the statutes limit suits in ·equity in the same manner as actions at law, and in those States the mortgage is held to be in effect extinguished when the mortgage debt is barred.

In the case of *Lord* v. *Morris*, 18 Cal. 482, the court said: " We do not question the correctness of the general doctrine prevailing in the courts of several of the States, that a mortgage remains in force until the debt, for the security of which it is given, is paid. We only hold that the doctrine has no application under the statute of limitations of this State." It was further said, in the same case: " Here a mortgage is regarded as between the parties, as well as with reference to the rights of the mortgagor in his dealings with third persons, as a mere security, creating a lien or charge upon the property, and not as a conveyance vesting any estate in the premises, either before or after condition broken. Here it confers no right to the possession of the premises either before or after default, and, of course, furnishes no support to the action of ejectment, or to a writ of entry for their recovery. The language of the statute is express, that it shall not be deemed ·a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession without a foreclosure and sale."

Referring to the operations of the statutes of limitations of some of the States in different forms and in certain classes of cases, the court proceeded: " The case is entirely different in this State. Here the statute applies equally to actions at law and to suits in equity. It is directed to the subject-matter and not to the form of the action, or the forum in which the action is prosecuted." The conclusion reached in that

case in effect was, that when, in California, the debt is barred by the statute of limitations, the mortgage being the incident merely is also barred, or, at least, rendered unavailable for any practical purpose.

It is well settled in this State that a mortgage upon real estate constitutes only a lien upon the land as a security for the debt it is given to secure, the legal title still remaining in the mortgagor, subject to the lien. Jones Mort., section 28; *Fletcher* v. *Holmes*, 32 Ind. 497; *Favorite* v. *Deardorff*, 84 Ind. 555.

It is equally well settled that in this State the debt is the principal thing and the mortgage only the incident. *Hubbard* v. *Harrison*, 38 Ind. 323; *Gabbert* v. *Schwartz*, 69 Ind. 450.

As we have but one form of action in civil cases, our statute of limitations is applicable to all demands, whether legal or equitable, for the recovery of money. It is directed to the subject-matter, and bars all claims according to the general class to which they respectively belong. It has also been held by this court that a mortgage is inoperative when the debt is void or has been discharged. *Sherman* v. *Sherman*, 3 Ind. 337; *State* v. *State Bank*, 5 Ind. 353; *Ledyard* v. *Chapin*, 6 Ind. 320, *Brisk* v. *Scott*, 47 Ind. 279; *Tate* v. *Fletcher*, 77 Ind. 102; *Bowman* v. *Mitchell*, 79 Ind. 84.

It follows that the rules of construction enunciated in the case of *Lord* v. *Morris*, *supra*, are fully applicable to the enforcement of mortgage liens in this State, carrying us to the inevitable extent of holding that when the mortgage debt becomes barred the mortgage lien ceases to be effective. *Duty* v. *Graham*, 12 Texas, 427; *Ross* v. *Mitchell*, 28 Texas, 150; *Kyger* v. *Ryley*, 2 Neb. 20; *Peters* v. *Dunnells*, 5 Neb. 460; *Crow* v. *Vance*, 4 Iowa, 434; *Burton* v. *Hintrager*, 18 Iowa, 348; *Newman* v. *DeCorrimer*, 19 Iowa, 244; *Gower* v. *Winchester*, 33 Iowa, 303; *Chick* v. *Willetts*, 2 Kan. 384; *Harris* v. *Mills*, 28 Ill. 44; *Hagan* v. *Parsons*, 67 Ill. 170.

This conclusion rests upon the assumption that the mortgage does not contain an express agreement to pay the mortgage debt.

The act of May 4th, 1852, concerning mortgages, contained the following section: "No mortgage shall be construed as implying a covenant for the payment of the sum intended to be secured, so as to enable the mortgagee, his assigns or representatives, to maintain an action for the recovery of such sum; and where there is no express covenant contained in the mortgage for such payment, and no bond or other separate instrument to secure such payment shall have been given, the remedies of the mortgagee shall be confined to the land mentioned in the mortgage." 2 R. S. 1876, p. 385, section 2; R. S. 1881, section 1087.

As will be readily observed, the mortgage declared on in this case contained no express covenant or undertaking to pay any of the sums of money it was given to secure the repayment of. Neither was it accompanied by any bond or other instrument in writing, binding Allen May to pay or to repay any sum of money. Under such circumstances the demand which John P. Dunn, at the time of his death, held against the estate of Allen May for reimbursement, can not be held to have rested upon a contract in writing, and hence was such a demand as might be barred by the six years' clause of the statute of limitations. Consequently, the court below, at special term, did not err in overruling the demurrer to the sixth paragraph of answer. *Joyce* v. *Joyce*, 1 Bush, 474; *Prewitt* v. *Wortham*, 79 Ky. 287; *Rittenhouse* v. *Levering*, 6 Watts & S. 190; *Bank of Pennsylvania* v. *Potius*, 10 Watts, 148; *Farmers' Bank* v. *Gilson*, 6 Pa. St. 51; *Stout* v. *Stout*, 44 Pa. St. 457; *Neilson* v. *Fry*, 16 Ohio St. 552; Brandt Suretyship, section 267; Sheldon Subrogation, section 110; Leading Cases in Equity, vol. 1, p. 145, vol. 2, p. 281.

This announcement is not in conflict with the case of *Ætna Life Ins. Co.* v. *Finch*, 84 Ind. 301, since an examination of the record in that case discloses that the mortgage therein referred to contained an express stipulation for the repayment of the money it was given to secure.

But it is claimed that John P. Dunn became subrogated to

the rights of the judgment plaintiffs in the judgments which he paid as the surety of Allen May, and that in that way his demand for reimbursement against May's estate was made to rest on the judgments as contracts in writing.

Unfortunately for this claim, the averments of the complaint were insufficient to support it. No reference was made to any particular judgment as having been rendered against John P. Dunn as the surety of May, and, in fact, there was no direct averment that any such a judgment was ever rendered in any court. It does not follow that every payment made by a surety entitles him to subrogation to the rights of the creditor. It is only under particular circumstances that he acquires the right to be thus subrogated. As a general rule, partial payment does not entitle a surety to subrogation. Consequently, a complaint to enforce a claim to subrogation ought to state the particular facts upon which the claim is founded. *Morrow* v. *United States Mortgage Co., ante,* p. 21; *Bank of Pennsylvania* v. *Potius, supra.*

Section 401, R. S. 1881, continuing in force section 69 of the code of 1852, declares that " if, from any cause, either party shall fail to plead or make up the issues within the time prescribed, the court shall forthwith enter judgment as upon a default, unless, for good cause shown, further time be given for pleading, on the payment of the costs occasioned by the delay."

This section confers upon courts the power, and, in the absence of cause shown to the contrary, makes it their duty, to enter judgment as upon default against any party who fails to plead, or to do his part in making up the issues, in a cause, within the time prescribed by the court, and that without reference to the state of the pleadings in other respects. In the very nature of things the entry of judgments for the failure to plead, or to do what is necessary in making up issues, rests very much in the discretion of the *nisi prius* courts. As the record in this cause shows nothing affirmatively to the contrary, we must assume that there was no

abuse of the court's discretion in entering judgment as upon default in this cause. Two months of unexplained delay, in replying to the sixth paragraph of the answer, was seemingly sufficient to put the appellees in default. As to several questions discussed in this opinion, see Jones Mort., sections 1202, 1203, 1204, 1206, 1207, 1208, 1209.

The judgment at general term is reversed, with costs, and the cause remanded with instructions to affirm the judgment at special term.

Filed June 18, 1884.